

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>CG ROXANE, LLC,<br>  dba "Crystal Geyser,"<br>UNITED PUMPING SERVICE, INC.,<br>and UNITED STORM WATER, INC.,<br><br>    Defendants. | CR No. 18 **18 CR 00448-SJO**<br><br>I N D I C T M E N T<br><br>[42 U.S.C. § 6928(d)(3): Omitting Material Information and Making Material False Statement; 42 U.S.C. § 6928(d)(1): Transporting Hazardous Waste to Unpermitted Facility; 49 U.S.C. § 5124: Unlawful Transportation of Hazardous Material; 18 U.S.C. § 2(b): Causing an Act to be Done] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

A. <u>Defendants</u>

1. Defendant CG ROXANE, LLC, a limited liability company, doing business as "Crystal Geyser" ("defendant CRYSTAL GEYSER"), produced drinking water under the name "Crystal Geyser" at its bottling plant in Olancha, California.

2.   Defendants UNITED PUMPING SERVICE, INC. ("defendant UNITED PUMPING"), a corporation, and UNITED STORM WATER, INC. ("defendant UNITED STORM WATER"), a corporation, were affiliated and related companies that shared the same address and phone number.  Defendant UNITED PUMPING provided transportation services for customers who needed to transport their hazardous and non-hazardous waste, and defendant UNITED STORM WATER provided, among other things, environmental and lake draining services.

B.   The Resource Conservation and Recovery Act

3.   The Resource Conservation and Recovery Act (hereinafter "RCRA"), Title 42, United States Code, Section 6901, et seq., was enacted by Congress to require safe management of hazardous waste from "cradle to grave," including during the generation, transportation, storage, and ultimate disposal of such waste.

4.   Regulations promulgated under RCRA identified and listed solid wastes that met the definition of "hazardous."  Waste could be deemed "hazardous" under RCRA for a number of reasons, including if the waste was ignitable, toxic, corrosive, or reactive, or if the waste was specifically listed as a hazardous waste in the regulations as a "listed" hazardous waste.

5.   Wastes containing arsenic in concentrations of five milligrams per liter ("mg/l") or more were considered toxic hazardous wastes under RCRA.  40 C.F.R. § 261.24.  In addition, aqueous wastes having a pH equal to or greater than 12.5 were considered corrosive hazardous wastes under RCRA.  40 C.F.R. § 261.22.

6.   One of the key devices that facilitated uniform enforcement and compliance with the requirements of RCRA was the uniform

hazardous waste manifest system. The uniform hazardous waste manifest was a document that traveled with the hazardous waste and accompanied all off-site hazardous waste shipments, unless an exemption applied. The manifest was central to the "cradle to grave" management system because it was intended to track the waste to its final, legal destination. The manifest was the form used for identifying the quantity, composition, origin, and destination of hazardous waste during its transportation from the point of generation to the point of disposal, treatment, or storage. 40 C.F.R. §§ 262.20-23; 42 U.S.C. § 6903(12).

    7. RCRA required the generator of a hazardous waste, who transported or offered for transport a hazardous waste for offsite treatment, storage, or disposal, to prepare a uniform hazardous waste manifest according to specific instructions. Those instructions required the generator to provide the proper shipping name, hazard class or division, identification number, and packing group number for each waste that was contained in the hazardous waste and identified in Part 172 of Title 49 of the Code of Federal Regulations. 40 C.F.R. § 262.20(a)(1) and Appendix to Part 262.

    8. RCRA also prohibited knowingly transporting a hazardous waste to a facility that lacked a permit to accept hazardous waste and prohibited knowingly omitting material information or making a false material statement on a document used or maintained for purposes of compliance with certain RCRA regulations. 42 U.S.C. §§ 6928(d)(1) and (3).

C.  The Hazardous Materials Transportation Act

9.  The Hazardous Materials Transportation Act ("HMTA"), Title 49, United States Code, Section 5101 et seq. was enacted by Congress to protect against the risks to life, property, and the environment that are inherent in the transportation of hazardous materials in intrastate, interstate, and foreign commerce.  49 U.S.C. § 5101.

10.  Regulations promulgated under the HMTA identified and listed materials that met the definition of "hazardous material."  49 U.S.C. § 5102(2); 49 C.F.R. § 171.8.

11.  One of the key devices that facilitated enforcement and compliance with the requirements of the HMTA was the shipping paper requirement.  Generally, under the HMTA, each person who offered a hazardous material for transportation was required to describe the hazardous material on a shipping paper by, among other things, providing the hazardous material's identification number, proper shipping name, hazard class or division number, and packing group number.  49 C.F.R. § 172.202(a).

D.  Arsenic-Contaminated Wastewater Generated By Defendant CRYSTAL GEYSER

12.  In producing its drinking water products, defendant CRYSTAL GEYSER would draw water from natural sources that contained naturally-occurring arsenic.

13.  Defendant CRYSTAL GEYSER would use sand filters to reduce the concentration of arsenic in the water drawn from underground wells so that the water met drinking water standards.

14. In order to assure the efficacy of the sand filters, defendant CRYSTAL GEYSER would regenerate the sand filters by back flushing a hydroxide and water solution through the sand filters.

15. The regeneration process would cause the sand filters to release arsenic into the hydroxide and water solution; consequently, it would generate thousands of gallons of arsenic-contaminated wastewater.

16. Defendant CRYSTAL GEYSER would discharge the arsenic-contaminated wastewater into a nearby manmade pond which defendant CRYSTAL GEYSER referred to as the Arsenic Pond.

17. In or about September 2014, testing by the California Department of Toxic Substances Control (the "DTSC") showed that the arsenic-contaminated wastewater stored in the Arsenic Pond constituted a RCRA hazardous waste.

18. In or about October 2014, testing by the DTSC also showed that arsenic-contaminated wastewater generated by the regeneration process was a RCRA hazardous waste.

19. On or about March 20, 2015, instead of discharging into the Arsenic Pond, defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER transported, and caused the transportation of, several thousand gallons of high pH, arsenic-contaminated wastewater, which resulted from a regeneration of the sand filters, to a hazardous waste facility within the County of Los Angeles. In transporting that hazardous wastewater, and in causing the transportation of that hazardous wastewater, defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER provided manifests that identified a waste code

associated with high pH but did not disclose any information about the arsenic content of the hazardous wastewater.

20. On or about April 13, 2015, in a preliminary list of violations, DTSC informed defendant CRYSTAL GEYSER that the arsenic-contaminated wastewater in the Arsenic Pond constituted a RCRA hazardous waste and instructed defendant CRYSTAL GEYSER to remove that wastewater from the Arsenic Pond and to transport it, using a hazardous waste manifest, to an authorized facility that was permitted to accept that hazardous waste.

21. These Introductory Allegations are hereby re-alleged and incorporated into each and every count of this Indictment.

## COUNTS ONE THROUGH THREE

[42 U.S.C. § 6928(d)(3); 18 U.S.C. § 2(b)]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER knowingly omitted, and willfully caused to be omitted, material information on a manifest and other document filed, maintained, and used for purposes of compliance with regulations promulgated by the Administrator of the Environmental Protection Agency under Subchapter III of Chapter 82, Title 42 of the United States Code. Specifically, defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER knowingly omitted, and willfully caused to be omitted, on the following uniform hazardous waste manifests, the material fact that the hazardous wastewater being transported into the Central District of California under that manifest contained a material amount of arsenic waste, in violation of Title 49, Code of Federal Regulations, Section 262.20(a) and the Appendix to Part 262.

| COUNT | DATE | UNIFORM HAZARDOUS WASTE MANIFEST NUMBER |
|---|---|---|
| ONE | 3-20-15 | 012241746 JJK |
| TWO | 3-21-15 | 012241747 JJK |
| THREE | 3-23-15 | 012241748 JJK |

## COUNT FOUR

[42 U.S.C. § 6928(d)(1)]

Between on or about May 11, 2015, and May 14, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER knowingly transported, and caused to be transported, toxic hazardous waste, namely, the liquid content of defendant CRYSTAL GEYSER's Arsenic Pond, containing five or more milligrams per liter of arsenic to a facility in Fontana, California, that, as defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER then knew, lacked a permit under Title 1 of the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. § 1411, et seq., or under Subchapter III of Chapter 82 of Title 42 of the United States Code.

## COUNTS FIVE THROUGH TEN

[42 U.S.C. § 6928(d)(3); 18 U.S.C. § 2(b)]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER, on a manifest and other document filed, maintained, and used for purposes of compliance with regulations promulgated by the Administrator of the Environmental Protection Agency under Subchapter III of Chapter 82 of Title 42 of the United States Code: (a) knowingly omitted, and willfully caused to be omitted, material information, namely, that wastewater being transported to the Central District of California contained arsenic hazardous waste; and (b) knowingly made, and willfully caused to be made, the material false statement that the wastewater was not subject to federal regulations for reporting proper disposal of hazardous waste, when, in fact, as defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER well knew, the wastewater was a toxic hazardous waste that was subject to federal regulations for reporting proper disposal of hazardous waste.

| COUNT | DATE | NON-HAZARDOUS WASTE MANIFEST NUMBER |
| --- | --- | --- |
| FIVE | May 11, 2015 | 112300 |
| SIX | May 12, 2015 | 113103 |
| SEVEN | May 12, 2015 | 113104 |
| EIGHT | May 13, 2015 | 113105 |
| NINE | May 13, 2015 | 113106 |
| TEN | May 14, 2015 | 107967 |

## COUNTS ELEVEN THROUGH SIXTEEN

[49 U.S.C. § 5124; 18 U.S.C. § 2(b)]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants CRYSTAL GEYSER, UNITED PUMPING, and UNITED STORM WATER willfully and recklessly transported and offered to transport, and willfully caused to be transported and offered to be transported, a hazardous material, namely, wastewater contaminated with arsenic, unlawfully, by: (a) using, and willfully causing the use of, the shipping papers described below that did not provide the hazardous material's identification number, proper shipping name, hazard class, or division number, and packing group number, in violation of Title 49, Code of Federal Regulations, Sections 172.200 and 172.202(a); and (b) failing to prepare, sign, carry, and give, and willfully causing the failure to prepare, sign, carry, and give, an EPA Form 8700-22 hazardous waste manifest, in violation of Title 49, Code of Federal Regulations, Section 172.205.

| COUNT | DATE | NON-HAZARDOUS WASTE MANIFEST NUMBER |
|---|---|---|
| ELEVEN | May 11, 2015 | 112300 |
| TWELVE | May 12, 2015 | 113103 |
| THIRTEEN | May 12, 2015 | 113104 |
| FOURTEEN | May 13, 2015 | 113105 |

| COUNT | DATE | NON-HAZARDOUS WASTE MANIFEST NUMBER |
|---|---|---|
| FIFTEEN | May 13, 2015 | 113106 |
| SIXTEEN | May 14, 2015 | 107967 |

A TRUE BILL

/S/
_____
Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

MARK A. WILLIAMS
Assistant United States Attorney
Acting Chief, Environmental and
  Community Safety Crimes Section

DENNIS MITCHELL
Assistant United States Attorney
Acting Deputy Chief,
Environmental and Community
Safety Crimes Section

ERIK M. SILBER
Assistant United States Attorneys
Environmental and Community
  Safety Crimes Section

11