FILED

2019 DEC 20  PM 3: 55

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
DENNIS MITCHELL (Cal. Bar No. 116039)
HEATHER C. GORMAN (Cal. Bar No. 258902)
MICHAEL G. FREEDMAN (Cal. Bar No. 281279)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2484/894-0334/894-0631
    Facsimile: (213) 894-3713
    E-mail:   dennis.mitchell@usdoj.gov
               heather.gorman@usdoj.gov
               michael.freedman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-448-SJO |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT CG ROXANE, LLC |
| v. | |
| CG ROXANE, LLC, | |
| Defendant. | |

    1.   This constitutes the plea agreement between CG ROXANE, LLC ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

1          a.   Give up the right to indictment by a grand jury and
2   any right to object to venue, and, at the earliest opportunity
3   requested by the USAO and provided by the Court, appear and plead
4   guilty to a two-count First Superseding Information in the form
5   attached to this agreement as Exhibit A or a substantially similar
6   form, which charges defendant with unlawful storage of hazardous
7   waste, in violation of 42 U.S.C. § 6928(d)(2), and unlawful
8   transportation of hazardous material, in violation of 49 U.S.C.
9   § 5124 and 18 U.S.C. § 2(b).

10         b.   Not contest facts agreed to in this agreement.

11         c.   Abide by all agreements regarding sentencing contained
12  in this agreement.

13         d.   Appear for all court appearances, surrender as ordered
14  for service of sentence, obey all conditions of any bond, and obey
15  any other ongoing court order in this matter.

16         e.   Not commit any crime; however, offenses that would be
17  excluded for sentencing purposes under United States Sentencing
18  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
19  within the scope of this agreement.

20         f.   Be truthful at all times with the United States
21  Probation and Pretrial Services Office and the Court.

22         g.   Pay the applicable special assessments at or before
23  the time of sentencing unless defendant has demonstrated a lack of
24  ability to pay such assessments.

25         h.   Recommend and advocate that the Court impose the
26  sentence set forth in paragraph 13, below.

27         i.   Do the following in connection with the prosecution of
28  co-defendants United Pumping Service, Inc. and United Storm Water,

1  Inc. in the matter <u>United States v. CG Roxane, LLC, et al.</u>, CR No.
2  18-448-SJO:

3      i.   Produce non-privileged documents requested by the
4  USAO, accompanied by either any necessary custodian of records
5  declaration or a custodian of records to testify at trial to
6  authenticate such documents;

7      ii.  Consent to the production and authentication of
8  documents by defendant's third-party service providers, other than
9  privileged documents, and to waive any such privilege with respect to
10 the draft and final reports prepared for defendant by Geosyntec
11 Consultants or any laboratory reports or test results reported by
12 Eurofins Eaton Analytical; and

13     iii. Not object if the USAO seeks to call an employee
14 of defendant to testify at trial.  However, this obligation does not
15 require defendant to request or encourage such employee to waive any
16 Constitutional right that may be implicated by such request.

17                    THE USAO'S OBLIGATIONS
18     3.   The USAO agrees to:
19         a.   Not contest facts agreed to in this agreement.
20         b.   Abide by all agreements regarding sentencing contained
21 in this agreement.

22         c.   At the time of sentencing, move to dismiss the
23 indictment as against defendant.  Defendant agrees, however, that at
24 the time of sentencing the Court may consider any dismissed charges
25 in determining the sentence to be imposed.

26         d.   At the time of sentencing, recommend and advocate that
27 the Court impose the sentence set forth in paragraph 13, below.

28

1

CORPORATE AUTHORIZATION

2     4.   Defendant represents that it is authorized to enter into
3 this agreement.  On or before the change of plea hearing pursuant to
4 this agreement, defendant shall provide the USAO and file with the
5 Court a notarized legal document(s) certifying that defendant is
6 authorized to enter into and comply with all of the provisions of
7 this agreement.  Such legal document(s) shall designate a company
8 representative who is authorized to take the actions specified in
9 this agreement, and shall also state that all legal formalities for
10 such authorizations have been observed.

11

ORGANIZATIONAL CHANGES AND APPLICABILITY

12     5.   This agreement shall bind defendant, its successor entities
13 (if any), parent companies, and any other person or entity that
14 assume the liabilities contained herein ("successors-in-interest").
15 Defendant, or its successors-in-interest, if applicable, shall
16 provide the USAO and the United States Probation and Pretrial
17 Services Office with reasonably prompt notice of any name change,
18 business reorganization, sale or purchase of assets, divestiture of
19 assets, or similar action impacting their ability to pay the fine or
20 affecting this agreement.  No change in name, change in corporate or
21 individual control, business reorganization, change in ownership,
22 merger, change of legal status, sale or purchase of assets, or
23 similar action shall alter defendant's responsibilities under this
24 agreement.  Defendant shall not engage in any action to seek to avoid
25 the obligations and conditions set forth in this agreement.

26

NATURE OF THE OFFENSES

27     6.   Defendant understands that for defendant to be guilty of
28 the crime charged in count one in the First Superseding Information,

4

1   that is, unlawful storage of hazardous waste, in violation of Title

2   42, United States Code, Section 6928(d)(2), the following must be

3   true: (1) defendant knowingly stored a waste material, (2) the waste

4   material was a hazardous waste, (3) defendant knew that the waste

5   material had the substantial potential to be harmful to others or the

6   environment, and (4) defendant stored the hazardous waste without a

7   permit under Subchapter III of Chapter 82 of Title 42 of the United

8   States Code  or pursuant to Title I of the Marine Protection,

9   Research, and Sanctuaries Act, 33 U.S.C. § 1411.

10       7.    Defendant understands that for defendant to be guilty of

11   the crime charged in count two of the First Superseding Information,

12   that is, unlawful transportation of a hazardous material, in

13   violation of Title 49, United States Code, Section 5124 and Title 18,

14   United States Code, Section 2(b), the following must be true:

15   defendant recklessly or willfully transported, or willfully caused

16   the transportation of, a hazardous material by using shipping papers

17   that did not provide the hazardous material's identification number,

18   proper shipping name, hazard class or division number, and packing

19   group number or by failing to prepare, sign, carry and give an EPA

20   Form 8700-22 hazardous waste manifest.

21                               PENALTIES

22       8.    Defendant understands that the statutory maximum sentence

23   that the Court can impose for a violation of Title 42, United States

24   Code, Section 6928(d)(2) is: a five year period of probation; a fine

25   of the greater of: (1) $500,000 or twice gross gain or gross loss

26   resulting from the offense, whichever is greatest; or (2) $50,000 for

27   each day of violation, and a mandatory special assessment of $400.

28   Defendant further understands that the statutory maximum sentence

1   that the Court can impose for a violation of Title 49, United States

2   Code, Section 5124, is: a five year period of probation; a fine of

3   $500,000 or twice the gross gain or gross loss resulting from the

4   offense, whichever is greatest; and a mandatory special assessment of

5   $400.

6        9.  Defendant understands, therefore, that the total maximum

7   sentence for all offenses to which defendant is pleading guilty is: a

8   five year period of probation, a fine of the greater of:

9   (1) $1,000,000 or twice gross gain or gross loss resulting from the

10   offense, whichever is greatest; or (2) $50,000 for each day of

11   violation, and a mandatory special assessment of $800.

12                 SUSPENSION, REVOCATION, AND DEBARMENT

13       10.  Defendant understands that if defendant holds any

14   regulatory licenses or permits, the conviction in this case may

15   result in the suspension or revocation of those licenses and permits.

16   The USAO makes no representation or promises concerning suspension or

17   debarment of defendant from contracting with the United States or

18   with any office, agency, or department thereof.  Suspension and

19   debarment of organizations convicted under various federal

20   environmental protection and criminal statutes is a discretionary

21   administrative action solely within the authority of the federal

22   contracting agencies.  Defendant understands that unanticipated

23   collateral consequences such as this will not serve as grounds to

24   withdraw defendant's guilty plea.

25                       FACTUAL BASIS

26       11.  Defendant admits that defendant is, in fact, guilty of the

27   offenses to which defendant is agreeing to plead guilty.  Defendant

28   and the USAO agree to the statement of facts provided below and agree

1  that this statement of facts is sufficient to support pleas of guilty
2  to the charges described in this agreement but is not meant to be a
3  complete recitation of all facts relevant to the underlying criminal
4  conduct or all facts known to either party that relate to that
5  conduct.

6     For many years defendant has operated a facility in Olancha,
7  California, where it has produced, and continues to produce bottled
8  water under the name "Crystal Geyser Natural Spring Water."  In order
9  to produce that product, defendant has drawn groundwater that
10 contained naturally-occurring arsenic.  In order to reduce the
11 concentration of arsenic in the water drawn from underground sources
12 so that it met drinking water standards, defendant would use
13 manganese dioxide sand filters to filter the arsenic from the
14 groundwater.  Because the sand filters collected arsenic, it was
15 necessary for defendant to clean the sand filters every two to three
16 months in order to assure their efficacy.  This cleaning process was
17 referred to as "regenerating" the sand filters.

18    The cleaning or regenerating of the sand filters was
19 accomplished by back-flushing the sand filters with a sodium
20 hydroxide solution.  This process generated several thousands of
21 gallons of arsenic-contaminated wastewater that constituted a
22 hazardous waste due to its arsenic concentration.

23    Beginning in or about 2001 and continuing to no later than March
24 2015, defendant would discharge the arsenic-contaminated wastewater
25 into a man-made pond, known as the Arsenic Pond, at defendant's
26 facility in Olancha.  Eventually, local authorities decided to
27 investigate defendant's waste discharge practices at its Olancha
28 facility.  First, the Lahontan Regional Water Quality Control Board

1  (the "Water Board") inspected defendant's Olancha facility in March

2  2013 and took a sample of the Arsenic Pond as well as samples from

3  other waste discharge locations at the Olancha facility.

4      Thereafter, on July 24, 2014, the Water Board issued its

5  Investigative Order to defendant.  Among other things, the Water

6  Board's order informed defendant that the sample taken from the

7  Arsenic Pond in March 2013 had an arsenic concentration of 46.3

8  milligrams per liter, more than eight times the hazardous waste limit

9  of five milligrams per liter.  The Water Board's order informed

10 defendant that the combination of the Arsenic Pond's arsenic

11 concentration and liner condition created a significant discharge

12 risk to the groundwater which could result in groundwater arsenic

13 concentrations that, among other things, would exceed drinking water

14 maximum contaminant levels, exceed concentration known to have

15 detrimental physiological effects upon wildlife species that

16 inhabited or depended upon habitat supported by the groundwater, and

17 exceeded concentration that threatened livestock health or adversely

18 affected agricultural production.

19     Acting on a referral from the Water Board, the California

20 Department of Toxic Substances Control ("DTSC") launched its own

21 investigation of defendant's wastewater discharge practices.

22 Consequently, on September 24, 2014, investigators from the DTSC

23 visited defendant's Olancha facility and took liquid and sediment

24 samples from the Arsenic Pond and other waste discharge locations at

25 the facility.  The liquid sample from the Arsenic Pond was

26 subsequently found to have an arsenic concentration level of 24.2

27 milligrams per liter, well above the hazardous waste limit.

28

1    In December 2014, in response to the Water Board's Investigative
2 Order, defendant arranged to take one or more samples of the Arsenic
3 Pond and to have the sample(s) analyzed by its own retained
4 laboratory.  Testing of the sample(s) taken revealed an arsenic
5 concentration that was more than four times the hazardous waste
6 limit.

7    On or about April 13, 2015, representatives of the DTSC met with
8 defendant's representatives.  During this meeting, the DTSC informed
9 defendant that, among other things, defendant's storage of the
10 regeneration wastewater in the Arsenic Pond constituted an unlawful
11 storage of a hazardous waste.  During the meeting, the DTSC provided
12 defendant with a list of preliminary violations, which, among other
13 things, instructed defendant to arrange for the removal of all of the
14 hazardous waste stored in the Arsenic Pond, using a qualified
15 remediation company and registered hazardous waste transporter, with
16 the use of a hazardous waste manifest, to an authorized facility that
17 was permitted to accept the hazardous waste.

18    In March 2015, defendant hired co-defendants United Storm Water,
19 Inc. and United Pumping Service, Inc. (collectively "the United co-
20 defendants") to transport regeneration wastewater from its facility
21 to a hazardous waste treatment facility.  In a March 12, 2015, email
22 sent to the United co-defendants' senior project manager, defendant's
23 Quality Control manager informed the senior project manager for the
24 United co-defendants that the regeneration wastewater had a pH level
25 greater than 12 and an arsenic concentration that was more than five
26 milligrams per liter.

27    Subsequently, in early May 2015, defendant hired the United co-
28 defendants to transport the Arsenic Pond wastewater to a disposal

facility.   In an email dated May 7, 2015, defendant's Quality Control
manager informed the United co-defendants' senior project manager
that the arsenic concentration of the Arsenic Pond wastewater to be
transported was approximately 42,000 parts per billion, which is the
equivalent of 42 milligrams per liter.

From at least March 1, 2013, until on or about May 11, 2015,
defendant knowingly stored waste in the Arsenic Pond that was
hazardous waste for arsenic.   During this period, defendant never
obtained, nor applied for, a permit to store hazardous waste, and
defendant was aware that the Arsenic Pond wastewater had the
substantial potential to be harmful to others or the environment.

Beginning on or about May 11, 2015, and ending on or about May
14, 2015, defendant and the United co-defendants removed and
transported the Arsenic Pond wastewater, which constituted both a
hazardous waste and a hazardous material under federal law.   In
removing and transporting this hazardous material, defendant and the
United co-defendants failed to use a hazardous waste manifest,
despite the fact that defendant had been instructed to do so by the
DTSC.   Instead, defendant recklessly and willfully used, and
willfully caused the reckless use of, a non-hazardous waste manifest,
instead of an EPA Form 8700-22 hazardous waste manifest, which
falsely declared that the Arsenic Pond wastewater was not a hazardous
waste and which did not contain information required under federal
law pertaining to this hazardous material, namely, its identification
number, proper shipping name, hazard class, or division number, and
packing group number.

Ultimately, the Arsenic Pond wastewater was transported by the
United co-defendants to a facility in Southern California that was

10

1  not authorized to receive and/or treat hazardous waste. As a result,
2  more than 23,000 gallons of the Arsenic Pond wastewater was
3  discharged into a county sewer without appropriate treatment and in
4  violation of that facility's waste discharge permit.

5                         SENTENCING AGREEMENT

6       12.  Defendant and the USAO agree and stipulate that, pursuant
7  to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and
8  8C2.10, the Sentencing Guidelines are not applicable in determining
9  the fine for an organization violating statutes relating to the
10  environment, but that all other sections of Chapter 8 of the U.S.S.G.
11  are applicable in this case, including the provisions regarding
12  probation and restitution. Defendant understands that in determining
13  defendant's sentence, the Court is required to consider the factors
14  set forth in 18 U.S.C. § 3553(a), including the kinds of sentence and
15  sentencing range established under the Sentencing Guidelines.
16  Defendant agrees that at the time of sentencing the Court may
17  consider any uncharged conduct in determining the applicable
18  Sentencing Guidelines range, the propriety and extent of any
19  departure from that range, and the sentence to be imposed after
20  consideration of the Sentencing Guidelines and all other relevant
21  factors under 18 U.S.C. § 3553(a).

22      13.  Pursuant to U.S.S.G. §§ 8D1.1 and 8D1.2 and the factors set
23  forth in Title 18, United States Code, Section 3553(a), including the
24  nature and circumstances of the offense and the history and
25  characteristics of the defendant, the need for the sentence imposed
26  to reflect the seriousness of the offense, to promote respect for the
27  law, to provide just punishment for the offense, to afford adequate
28  deterrence to criminal conduct, and to protect the public from

further crimes of the defendant, the parties agree to recommend and advocate that the Court impose the following sentence:

a.  Probation: Defendant shall be sentenced to a three-year term of probation with conditions to be fixed by the Court, including, but not limited to, the conditions of probation set forth in Exhibit B to this agreement.

b.  Criminal Fine: Defendant shall pay a criminal fine of $5,000,000 (Five Million Dollars).  The criminal fine shall be paid by certified check or wire transfer to the Clerk of the United States District Court for the District of California, and confirmation of the completed wire transfer or certified check shall be provided by defendant to the USAO, within two weeks of the date the sentence is imposed.

c.  Special Assessment: Defendant shall pay a total special assessment of $800.

                    WAIVER OF CONSTITUTIONAL RIGHTS

14.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

1        e.    The right to confront and cross-examine witnesses
2  against defendant.

3        f.    The right to testify and to present evidence in
4  opposition to the charges, including the right to compel the
5  attendance of witnesses to testify.

6        g.    The right not to be compelled to testify, and, if
7  defendant chose not to testify or present evidence, to have that
8  choice not be used against defendant.

9        h.    Any and all rights to pursue any affirmative defenses,
10  Fourth Amendment or Fifth Amendment claims, and other pretrial
11  motions that have been filed or could be filed.

12                   WAIVER OF VENUE

13    15.   Having been fully advised by defendant's attorney regarding
14  the requirements of venue with respect to the offenses to which
15  defendant is pleading guilty, to the extent the offenses to which
16  defendant is pleading guilty were committed, begun, or completed
17  outside the Central District of California, defendant knowingly,
18  voluntarily, and intelligently waives, relinquishes, and gives up:
19  (a) any right that defendant might have to be prosecuted only in the
20  district where the offenses to which defendant is pleading guilty
21  were committed, begun, or completed; and (b) any defense, claim, or
22  argument defendant could raise or assert based upon lack of venue
23  with respect to the offenses to which defendant is pleading guilty.

24            WAIVER OF APPEAL OF CONVICTION

25    16.   Defendant understands that, with the exception of an appeal
26  based on a claim that defendant's guilty pleas were involuntary, by
27  pleading guilty defendant is waiving and giving up any right to
28  appeal defendant's convictions on the offenses to which defendant is

pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.  Defendant agrees that, provided the Court imposes the sentence specified in paragraph 13, defendant gives up the right to appeal any portion of the sentence.

18.  The USAO agrees that, provided the Court imposes the sentence specified in paragraph 13, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

19.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

14

1

EFFECTIVE DATE OF AGREEMENT

2    20.  This agreement is effective upon signature and execution of

3 all required certifications by defendant, defendant's counsel, and an

4 Assistant United States Attorney.

5

BREACH OF AGREEMENT

6    21.  Defendant agrees that if defendant, at any time after the

7 signature of this agreement and execution of all required

8 certifications by defendant, defendant's counsel, and an Assistant

9 United States Attorney, knowingly violates or fails to perform any of

10 defendant's obligations under this agreement ("a breach"), the USAO

11 may declare this agreement breached.  All of defendant's obligations

12 are material, a single breach of this agreement is sufficient for the

13 USAO to declare a breach, and defendant shall not be deemed to have

14 cured a breach without the express agreement of the USAO in writing.

15 If the USAO declares this agreement breached, and the Court finds

16 such a breach to have occurred, then: (a) if defendant has previously

17 entered guilty pleas pursuant to this agreement, defendant will not

18 be able to withdraw the guilty pleas, and (b) the USAO will be

19 relieved of all its obligations under this agreement.

20    22.  Following the Court's finding of a knowing breach of this

21 agreement by defendant, should the USAO choose to pursue any charge

22 or any civil, administrative, or regulatory action that was either

23 dismissed or not filed as a result of this agreement, then:

24    a.  Defendant agrees that any applicable statute of

25 limitations is tolled between the date of defendant's signing of this

26 agreement and the filing commencing any such action.

27    b.  Defendant waives and gives up all defenses based on

28 the statute of limitations, any claim of pre-indictment delay, or any

15

1   speedy trial claim with respect to any such action, except to the

2   extent that such defenses existed as of the date of defendant's

3   signing this agreement.

4           c.    Defendant agrees that: (i) any statements made by

5   defendant, under oath, at the guilty plea hearing (if such a hearing

6   occurred prior to the breach); (ii) the agreed to factual basis

7   statement in this agreement; and (iii) any evidence derived from such

8   statements, shall be admissible against defendant in any such action

9   against defendant, and defendant waives and gives up any claim under

10  the United States Constitution, any statute, Rule 410 of the Federal

11  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

12  Procedure, or any other federal rule, that the statements or any

13  evidence derived from the statements should be suppressed or are

14  inadmissible.

15              COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

16                          OFFICE NOT PARTIES

17      23.   Defendant understands that the Court and the United States

18  Probation and Pretrial Services Office are not parties to this

19  agreement and need not accept any of the USAO's sentencing

20  recommendations or the parties' agreements to facts or sentencing

21  factors.

22      24.   Defendant understands that both defendant and the USAO are

23  free to: (a) supplement the facts by supplying relevant information

24  to the United States Probation and Pretrial Services Office and the

25  Court, (b) correct any and all factual misstatements relating to the

26  Court's Sentencing Guidelines calculations and determination of

27  sentence, and (c) argue on appeal and collateral review that the

28  Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the recommended sentence in paragraph 13 is consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

26.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

1
<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2
    27.   The parties agree that this agreement will be considered

3
part of the record of defendant's guilty plea hearing as if the

4
entire agreement had been read into the record of the proceeding.

5
AGREED AND ACCEPTED

6
UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF

7
CALIFORNIA

8
NICOLA T. HANNA
United States Attorney

9

10
_____           12-19-19

DENNIS MITCHELL                          Date

11
HEATHER C. GORMAN
MICHAEL G. FREEDMAN

12
Assistant United States Attorneys

13
_____           December 18, 2019

CG ROXANE, LLC                        Date

14
Defendant

By: PEDROM GHAFOORI, Corporate

15
Counsel

16
                                   December 18, 2019

_____           Date

17
JEFFREY E. TSAI
GEORGE JOHN GIGOUNAS

18
WILLIAM W. CARTER
JANE E. USHER

19
Attorneys for
Defendant CG ROXANE, LLC

20
//

21
//

22
//

23

24

25

26

27

28

1

<u>CERTIFICATION OF DEFENDANT</u>

2      I have been authorized by defendant CG Roxane, LLC ("defendant")

3  to enter into this agreement on behalf of defendant.  I have read

4  this agreement in its entirety.  I have had enough time to review and

5  consider this agreement, and I have carefully and thoroughly

6  discussed every part of it with defendant's attorney.  I understand

7  the terms of this agreement on behalf of defendant.  I have discussed

8  the evidence with defendant's attorney, and defendant's attorney has

9  advised me of defendant's rights, of possible pretrial motions that

10  might be filed, of possible defenses that might be asserted either

11  prior to or at trial, of the sentencing factors set forth in 18

12  U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and

13  of the consequences of entering into this agreement.  No promises,

14  inducements, or representations of any kind have been made to me or

15  to defendant other than those contained in this agreement.  No one

16  has threatened or forced me in any way to enter into this agreement.

17  I am satisfied with the representation of defendant's attorney in

18  this matter, and I am pleading guilty on behalf of defendant because

19  is guilty of the charges and wishes to take advantage of the promises

20  set forth in this agreement, and not for any other reason.

21

22  CG ROXANE, LLC _____    <u>December 18, 2019</u>
    Defendant                                  Date

23  By: _____

24  PEDROM GHAFOORI
    Corporate Counsel

25  Its Authorized Representative

26

27

28

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am defendant CG Roxane, LLC's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of its rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____     December 18, 2019
JEFFREY H. TSAI                           _____
GEORGE JOHN GIGOUNAS                      Date
WILLIAM J. CARTER
JANE E. USHER
Attorneys for
Defendant CG Roxane, LLC

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>            v.<br><br>CG ROXANE, LLC,<br><br>                 Defendant. | CR No. 18-448(A)-SJO<br><br>F I R S T<br>S U P E R S E D I N G<br>I N F O R M A T I O N<br><br>[42 U.S.C. § 6928(d)(2): Unlawful Storage of Hazardous Waste; 49 U.S.C. § 5124: Unlawful Transportation of Hazardous Material; 18 U.S.C. § 2(b): Causing an Act to be Done] |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this First Superseding Information:

A.    The Resource Conservation and Recovery Act

1.    The Resource Conservation and Recovery Act (hereinafter "RCRA"), Title 42, United States Code, Section 6901, et seq., was enacted by Congress to require safe management of hazardous waste from "cradle to grave," including during the generation, transportation, storage, and ultimate disposal of such waste.

2.    Regulations promulgated under RCRA identified and listed solid wastes that met the definition of "hazardous." Waste could be deemed "hazardous" under RCRA for a number of reasons, including if

1   the waste was ignitable, toxic, corrosive, or reactive, or if the

2   waste was specifically listed as a hazardous waste in the regulations

3   as a "listed" hazardous waste.  40 C.F.R. § 261.3.

4        3.   Wastes containing arsenic in concentrations of five

5   milligrams per liter ("mg/l") or more were considered toxic hazardous

6   wastes under RCRA.  40 C.F.R. § 261.24.  In addition, aqueous wastes

7   having a pH equal to or greater than 12.5 were considered corrosive

8   hazardous wastes under RCRA.  40 C.F.R. § 261.22.

9   B.   The Hazardous Materials Transportation Act

10       4.   The Hazardous Materials Transportation Act ("HMTA"), Title

11   49, United States Code, Section 5101, et seq., was enacted by

12   Congress to protect against the risks to life, property, and the

13   environment that are inherent in the transportation of hazardous

14   materials in intrastate, interstate, and foreign commerce.  49 U.S.C.

15   § 5101.

16       5.   Regulations promulgated under the HMTA identified and

17   listed materials that met the definition of "hazardous material."  49

18   U.S.C. § 5102(2); 49 C.F.R. § 171.8.

19       6.   One of the key devices that facilitated enforcement and

20   compliance with the requirements of the HMTA was the shipping paper

21   requirement.  Generally, under the HMTA, each person who offered a

22   hazardous material for transportation was required to describe the

23   hazardous material on a shipping paper by, among other things,

24   providing the hazardous material's identification number, proper

25   shipping name, hazard class or division number, and packing group

26   number.  49 C.F.R. § 172.202(a).

27

28

C.   Arsenic-Contaminated Wastewater Generated by Defendant CG ROXANE, LLC

7.   Defendant CG ROXANE, LLC, a limited liability company, produced bottled water under the name "Crystal Geyser Natural Alpine Spring Water" at its bottling facility in Olancha, California.

8.   In producing its drinking water, defendant CG ROXANE, LLC would draw water from natural sources that contained naturally-occurring arsenic.

9.   Defendant CG ROXANE, LLC would use sand filters to reduce the concentration of arsenic in the water drawn from underground sources so that the water met drinking water standards.

10.   In order to assure the efficacy of the sand filters, defendant CG ROXANE, LLC would regenerate the sand filters by back flushing a sodium hydroxide solution through the sand filters.

11.   The regeneration process would cause the sand filters to release arsenic; consequently, the process would generate thousands of gallons of arsenic-contaminated wastewater.

12.   Defendant CG ROXANE, LLC would discharge the arsenic-contaminated wastewater into a nearby manmade pond which defendant CG ROXANE, LLC referred to as the Arsenic Pond.

13.   In or about September 2014, testing by the California Department of Toxic Substances Control (the "DTSC") showed that the arsenic-contaminated wastewater stored in the Arsenic Pond constituted a RCRA hazardous waste.

14.   In or about October 2014, testing by the DTSC also showed that arsenic-contaminated wastewater generated by the regeneration process was a RCRA hazardous waste.

15. On or about April 13, 2015, in a preliminary list of violations, DTSC informed defendant CG ROXANE, LLC that the arsenic-contaminated wastewater in the Arsenic Pond constituted a RCRA hazardous waste and instructed defendant CG ROXANE, LLC to arrange for the removal and transportation of the hazardous waste stored in the Arsenic Pond using a hazardous waste manifest.

16. These Introductory Allegations are hereby re-alleged and incorporated by reference into each count of this First Superseding Information.

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ONE

[42 U.S.C. § 6928(d)(2)]

Beginning on or before March 1, 2013 and continuing to on or about May 11, 2015, in Inyo County, within the Eastern District of California, and elsewhere, defendant CG ROXANE, LLC, knowingly stored hazardous waste, namely, arsenic-contaminated wastewater that had an arsenic concentration of five or more milligrams per liter, without having a permit under Subchapter III of Chapter 82 of Title 42 of the United States Code or pursuant to Title 1 of the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. § 1411, et seq.

COUNT TWO

[49 U.S.C. § 5124; 18 U.S.C. § 2(b)]

On or about May 11, 2015, in San Bernardino County, within the Central District of California, and elsewhere, defendant CG ROXANE, LLC willfully and recklessly transported and offered to transport, and willfully caused to be transported and offered to be transported, a hazardous material, namely, wastewater contaminated with arsenic, unlawfully, by: (a) using, and willfully causing the use of, shipping papers, namely Non-Hazardous Waste Manifest number 112300, that did not provide the hazardous material's identification number, proper shipping name, hazard class, or division number, and packing group number, in violation of Title 49, Code of Federal Regulations, Sections 172.200 and 172.202(a); and (b) failing to prepare, sign, carry, and give, and willfully causing the failure to prepare, sign, carry, and give, an EPA Form 8700-22 hazardous waste manifest, in violation of Title 49, Code of Federal Regulations, Section 172.205.


NICOLA T. HANNA
United States Attorney



BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
Assistant United States Attorney
Chief, Environmental and Community
  Safety Crimes Section

DENNIS MITCHELL
HEATHER C. GORMAN
MICHAEL G. FREEDMAN
Assistant United States Attorneys
Environmental and Community Safety
  Crimes Section

**EXHIBIT B**

CONDITIONS OF PROBATION

In addition to other conditions of probation that the Court may order at the sentencing hearing, the parties hereby agree to affirmatively recommend and advocate that the Court impose the following conditions of probation:

1.    Defendant CG Roxane, LLC ("defendant"), shall develop, maintain, and implement a comprehensive environmental compliance program for compliance with the Resource Conservation and Recovery Act ("RCRA") and the Hazardous Material Transportation Act ("HMTA") for its facility in Olancha, California.    The compliance program, which shall be developed within 90 calendar days and implemented within 180 calendar days from the date defendant is sentenced, shall include defendant's retention of a qualified and experienced third-party environmental compliance auditor (the "Environmental Auditor"), that is not affiliated with defendant, to conduct audits annually of defendant's Olancha facility.    The audits shall not take longer than approximately one week per site; however, the auditor may take additional time as reasonably necessary.    Defendant will fully cooperate in these audits, including promptly providing access to its facilities, employees, and documentation.    The Environmental Auditor shall promptly provide a comprehensive written report of each audit to defendant, the USAO, and the United States Probation Officer ("Probation Officer"), and the Environmental Auditor shall cooperate fully in responding to questions from defendant, the Probation Officer, or the USAO regarding its audits and/or written reports.    To the extent that the Environmental Auditor identifies any violations that do not constitute criminal violations, or the need for

1 │ compliance enhancements, defendant shall have 30 days to cure such

2 │ violations and/or apply such compliance enhancements before any

3 │ breach of the Plea Agreement is declared.

4 │     2.   Defendant shall comply with all local, state, and federal

5 │ laws, including but not limited, to RCRA and HMTA provisions.

6 │     3.   Within 30 days of the date of the sentencing hearing,

7 │ defendant shall designate an official of the organization to act as

8 │ the organization's representative and to be the primary contact with

9 │ the Probation Officer.

10 │     4.   Defendant shall notify the Court, through the Probation

11 │ Officer, and the USAO promptly upon learning of: (1) any material

12 │ adverse change in its business or financial condition or prospects;

13 │ (2) the commencement of any bankruptcy proceeding or criminal

14 │ prosecution against defendant; or (3) the commencement of any major

15 │ civil litigation, administrative proceeding, or any investigation or

16 │ formal inquiry by government authorities regarding defendant that

17 │ impacts defendant's ability to perform any conditions of probation.

18 │ Defendant shall answer truthfully all inquiries by the Probation

19 │ Officer and follow the instructions of the Probation Officer.

20 │     5.   Defendant shall notify the USAO and the Probation Officer

21 │ of any change in its principal business or mailing address, ten days

22 │ prior to such change or within 72 hours if advance notice is not

23 │ possible.

24 │     6.   Defendant shall permit a Probation Officer to visit any of

25 │ defendant's locations.

26 │     7.   Defendant shall provide reasonably prompt notice to the

27 │ Probation Officer and USAO of any sale of defendant, change in

28 │ defendant's name, merger of defendant with another business entity,

or otherwise any changes to defendant's organizational structure that

impacts defendant's ability to perform any conditions of probation.